**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2017

Lyle W. Cayce
Clerk

No. 16-60240
Summary Calendar

FOREMOST INSURANCE COMPANY,

      Plaintiff - Appellee

v.

CHARLES PENDLETON,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:14-CV-701

Before STEWART, Chief Judge, and JOLLY and JONES, Circuit Judges.

PER CURIAM:[*]

      Defendant-Appellant Charles Pendleton filed an insurance claim with Plaintiff-Appellee Foremost Insurance Company ("Foremost") after his 1956 Mercedes-Benz was destroyed. Contending that the car was not destroyed by accident, Foremost refused to pay out Pendleton's policy and filed for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60240

declaratory relief. Following a trial, the jury found in favor of Foremost. Pendleton appeals the jury's verdict. We AFFIRM.

## I.     BACKGROUND & PROCEDURAL HISTORY

Pendleton is an antique vehicle collector. After purchasing a 1956 190SL Mercedes-Benz convertible on January 3, 2014,[1] he had the car insured through Foremost on January 14, 2014. The purchased policy explained in pertinent part that "[Foremost does] not provide coverage for any 'insured' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy." On January 28, 2014, the car was destroyed in a collision and subsequent fire. Pendleton and Foremost dispute whether the car's destruction was deliberate or accidental.

According to Pendleton, on the day of the incident, he and an acquaintance, George Reed, met at Pendleton's home in Vicksburg, Mississippi to drive to Edwards, Mississippi—approximately twenty miles away[2]—to go to a hardware store. Despite a recent snow and icy road conditions, Pendleton and Reed took back roads instead of the interstate. En route to the hardware store, Reed, who was following Pendleton in a Ford F-250, allegedly hit the back of Pendleton's Mercedes when the truck slipped on an ice patch. Pendleton claims that the impact caused the Mercedes to collide with a tree. Approximately ten minutes later, the Mercedes caught fire and was completely destroyed.

---

[1] Although the bill of sale indicates that Pendleton purchased the Mercedes-Benz for $165,000, no money ever actually changed hands. The seller, Paul Winfield, needed to divest himself of certain assets before serving a prison sentence for a bribery offense he committed while serving as Mayor of Vicksburg, Mississippi.

[2] At trial, Pendleton testified that: he (1) "wasn't going to drive the vehicle in that type of weather," (2) that he "was simply . . . going to drive it around the neighborhood to let the [newly added] coolant circulate through the engine," and that (3) he decided to drive the antique car to Edwards, Mississippi to go to the hardware store despite the weather. Mr. Reed testified that he and Pendleton were going to the hardware store in Edwards "to haul some hardwood flooring."

2

No. 16-60240

Deputy Arthur Turner arrived on the scene sometime after the fire subsided. Contrary to Pendleton's assertions, Deputy Turner noted that the damage on the backend of the Mercedes was not consistent with the damage to the front of the F-250, nor was the damage to either vehicle consistent with a rear-end collision. He also found that there was no paint transfer between the two vehicles. Because of this, Deputy Turner concluded that there had been "no impact at all." Finally, when Deputy Turner interviewed Reed at the scene, he denied having any prior relationship with Pendleton. After Deputy Turner ran the F-250's plates, however, he discovered that the truck was registered to Pendleton.

The next day, Pendleton reported a complete loss to Foremost, seeking full coverage under the policy. Following an investigation, Foremost denied Pendleton's claim, determining that the car's destruction was not accidental. Accordingly, Foremost brought the instant matter before the U.S. District Court for the Southern District of Mississippi seeking a declaratory judgment that it was not obligated to pay Pendleton's claim. Pendleton counterclaimed, seeking $185,000 pursuant to the policy. After several months of discovery, the case proceeded to trial.

At trial, Michael Miller testified as a forensic fire investigator. Miller explained that the fire originated somewhere near the Mercedes's front passenger seat. He then explained that there was not a potential ignition source in that area of the car. Thereafter, Kevin Brown testified as an expert mechanic and accident reconstructionist. He explained that the damage to the Mercedes was "consistent with a relatively minor impact with a push as opposed to a 35-mile-an-our [sic] impact." Brown also testified that, contrary to Pendleton's assertions, the Mercedes was in extremely poor condition. Based on photographs of the car's engine, Brown concluded that even before

3

the accident occurred, the car would not have been able to start, and even if it could start, the brakes would not have worked.

Over Pendleton's objection, Foremost admitted evidence of Pendleton's past insurance claims. The district court deemed this evidence admissible under Federal Rule of Evidence 404(b), as the evidence showed Pendleton's "modus operandi." In so ruling, the district court found that "in the relatively recent past, Mr. Pendleton and his associates have been involved in similar accidents surrounded by similar circumstances regarding insurance, which is obviously relevant to the defendant's defense in this case."

At the trial's close, the jury returned a special verdict, finding that Foremost proved "by clear and convincing evidence that . . . Pendleton intentionally destroyed or procured the intentional destruction of the insured 1956 Mercedes."

## II.    DISCUSSION

On appeal, Pendleton raises two assignments of error. First, he contends that because Foremost did not present any evidence of incendiary origin and motive, two of civil arson's essential elements, the jury's verdict must be set aside. Second, Pendleton contends that the district court's admitting evidence of his past insurance claims was unduly prejudicial, requiring this court to vacate and remand his case for retrial. We address each issue in turn.

### A.

Pendleton argues, citing *McGory v. Allstate Ins. Co.*, 527 So. 2d 632, 636 (Miss. 1988), that for the jury to find in favor of Foremost, it must have found by clear and convincing evidence that: Pendleton (1) had the opportunity to set (2) an incendiary fire and (3) had motive to do so. He concedes that the first element is met, but contends that Foremost presented no evidence of the other two elements. Foremost counters that the jury was not required to find that the car was destroyed by an intentionally set fire, but rather that Pendleton

deliberately destroyed the car. Because the jury found that Pendleton "intentionally destroyed or procured the intentional destruction of the [Mercedes]," we agree with Foremost. Thus, we now evaluate whether there was sufficient evidence for a rational jury to find that Pendleton purposefully destroyed the Mercedes, thereby precluding him from collecting on his insurance policy.

We review the district court's denial of a motion for judgment as a matter of law de novo. *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008). A Rule 50 motion in a case tried by a jury, however, "is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Our review of a jury's verdict is "especially deferential." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). Accordingly, "[a] jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Heck v. Triche*, 775 F.3d 265, 273 (5th Cir. 2014).

Here, there is sufficient evidence for a reasonable jury to find by clear and convincing evidence that Pendleton intentionally brought about the destruction of his Mercedes. *See cf. Sullivan v. Am. Motorist Ins. Co.*, 605 F.2d 169, 170 (5th Cir. 1979) (finding sufficient evidence in the record to support a finding that the insured intentionally set fire to his house). Viewing the evidence in the light most favorable to Foremost, a rational jury could conclude that Reed, whose F-250 has three trailer hitches, towed Pendleton's Mercedes onto an icy road and pushed it into a tree, causing the car to crash and catch fire. And although it is not a necessary finding,[3] it is also reasonable for a jury

---

[3] Regardless of how the fire began—whether it was intentionally set or the byproduct of the F-250's pushing the Mercedes into the tree—it was nevertheless the result of an intentional act, precluding Pendleton's ability to recover under his insurance policy with Foremost.

No. 16-60240

to conclude that Pendleton intentionally set the Mercedes on fire, given the lack of a natural ignition source in the passenger seat where the fire started. Under either theory, there is a legally sufficient evidentiary basis for a reasonable jury to find by clear and convincing evidence that Pendleton intentionally destroyed his Mercedes. *See Triche*, 775 F.3d at 273.

**B**.

Next, Pendleton argues that the district court erred when it admitted evidence of his prior insurance claims. He avers that this evidence was unduly prejudicial and inappropriately swayed the jury against him.

We review this issue for abuse of discretion. *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010). Even if we find that the district court abused its discretion, the error is not reversible unless the evidence affects the moving party's substantial rights, "that is, when it constitutes harmful error." *Id.*; *see also* Fed. R. Civ. P. 61. "An error is harmless when 'the same result would have been reached had it not existed.'" *Heflin v. Merrill*, 154 So. 3d 887, 903 (Miss. Ct. App. 2013) (quoting *James v. State*, 124 So. 3d 693, 699 (Miss. Ct. App. 2013)).

As detailed above, there is ample evidence in the record supporting the jury's verdict sufficient to show that the presence or absence of the evidence in question would not have affected the jury's verdict. *Id.* 903. Therefore, even assuming *arguendo* that the district court admitted this evidence in error, any error was harmless. *See id.*; *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting . . . evidence . . . is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

### III.  CONCLUSION

For the reasons stated above, we AFFIRM the jury's verdict.